IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

SETH BOONE TEMPLES, :
　　　　: 
　　Plaintiff, :
　　　　:
VS. : CIVIL ACTION FILE NO.
　　: **7 : 04-CV-73 (HL)**
SHIRLEY LEWIS, et al., :
　　　　:
　　Defendants. :
_____

## RECOMMENDATION

Presently pending in this *pro se* prisoner § 1983 action are two motions for summary judgment. In his notarized complaint, plaintiff alleges that on August 2, 2003, he was housed in an isolation cell at Lowndes County Jail, when he fell and injured himself. Plaintiff states he split his arm open on a jagged piece of metal, hit his head, ribs, and back. This resulted in a 3-4 inch long laceration on his arm that was about one inch deep. Plaintiff stated he tried to staunch the blood with his t-shirt, and tried to get a guard's attention. About an hour later, an officer came and took him to medical for treatment. Plaintiff was told that he might require stitches and a head x-ray. Plaintiff states he sat in medical waiting for transport to the hospital for approximately four and a half hours, when he asked one of the nurses (who is not a party to this lawsuit) when he would receive treatment. He was then told he would not receive treatment, and was transported back to his cell without being taken to the hospital. According to plaintiff's own admission, he was angry and decided to fake a suicide attempt, and placed a plastic bag over his head and tied a t-shirt around his neck. As a consequence, plaintiff was taken to a cell in medical where he was stripped, later given a paper gown, and had no blanket or other covering.

Plaintiff states he fell asleep on the toilet, and awoke on the floor, in pain, bleeding from his nose and both ears. After banging on his door for 30 minutes, plaintiff was able to tell a guard what happened. Plaintiff was then forcibly placed in a restraint chair by defendants Cofield and McKennon, which caused the laceration on his arm to reopen and begin bleeding again. Plaintiff states he was only checked for his blood pressure and pulse, and repeatedly asked for more medical care for his other injuries. Plaintiff states he received no treatment for the pain, not even Tylenol. Plaintiff states that he continues to suffer from migraine headaches, and has nerve damage in his fingers due to the laceration on his arm.

*1. Defendant Lewis' Motion for Summary Judgment (doc. 55)*

Defendant Lewis, who is the owner and operator of Secured Healthcare Services, Inc., the entity that provided health care to inmates at Lowndes County Detention Center, moves for summary judgment.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate

that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Harris, 941 F.2d at 1505. It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25 (1993). Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting Horn ex rel. Parks v. Madison Co. Fiscal Court, 22 F.3d 653, 660 (6th Cir.

1994), cert. denied, 513 U.S. 873 (1994). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." McElligott v. Foley, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

"[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Hill v. DeKalb RYDC, 40 F.3d 1176, 1191 (11th Cir. 1994). The "seriousness" of an inmate's medical needs may be decided by reference to the effect of delay in treatment. Hill, 40 F.3d at 1188. Where the delay in treatment results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." Id. Further, the Eleventh Circuit has held that "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir.1994). Consequently, a delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. Hill, 40 F.3d at 1189.

The medical evidence provided by and relied upon by both plaintiff and defendant for purposes of summary judgment shows that plaintiff did receive medical treatment. (Exhibit B, Doc. 59 and Doc. 67).

4

On July 31, 2003, plaintiff's medical records show that he was upset about being back in jail again and stated he did not know what he would do if he couldn't have any of his medication. Plaintiff was placed in a strip cell with a paper gown only as a result of that and other suicidal ideations. (Exhibit B, Doc. 59 p.85). Two days after being placed in the cell, plaintiff was found with a laceration on his arm. Plaintiff was taken to medical, where his wound was cleaned, covered with a bandage, and secured with tape; plaintiff was given Advil for pain and was told he might have to go to the hospital for stitches. (Exhibit B, Doc. 59, p. 84). Plaintiff, after becoming unruly and verbally aggressive, was escorted back to his cell. (Exhibit B., Doc. 59, p. 83).

According to the medical records and plaintiff's own admission in his complaint, plaintiff was found with a plastic bag over his head and a strip of fabric tied around his neck; he was therefore placed in a strip cell with only a paper gown. (Exhibit B, Doc. 59, p. 82). Plaintiff indicated that he had swallowed 15 Ellavil tablets he obtained from another inmate; thirty minutes later, plaintiff was placed in a behavior modification chair, where he continued to yell and attempt to move the chair side to side. Medical records show that plaintiff's blood pressure, pulse and circulation were monitored regularly. (Exhibit B, Doc. 59, p. 80-81).

Plaintiff over the course of the next several days continuously cursed at staff, flooded his cell, and requested to be released from medical. (Exhibit B, Doc. 59, p. 76-79). On August 4, 2003, plaintiff was found banging his head against his cell door, and was again placed in a behavior modification chair, where he continued to yell and curse at staff. Dried blood on his right ear was cleaned off, and no active bleeding was noted. (Exhibit B, Doc. 59, p. 77). Over the course of the next several days, plaintiff was monitored, and regularly given Tylenol for his ear pain and

5

headaches. (Exhibit B, Doc. 59, p. 61-71).

Although plaintiff claims that he has suffered permanent injury due to the alleged delay or denial of medical care, and states his own conclusion that proper treatment would have resulted in no permanent injury, he has failed to provide any medical documentation that it was the delay in receiving medical care, rather than the injury to his arm and his head that caused the alleged permanent damage as is contemplated by Hill, supra. Nor has plaintiff provided any supporting documentation that he in fact suffers a permanent injury, despite the fact that plaintiff is no longer incarcerated.

Although plaintiff's complaint was notarized, it was not sworn to in any fashion, and plaintiff has failed to file an affidavit in support of his allegations. Nor has plaintiff complied with 28 U.S.C.A. § 1746, which provides for the admission of unsworn statements if they are verified by the signor that it is made "under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Mere negligence or medical malpractice is insufficient to prove a constitutional violation. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991). "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Id.

The undersigned finds that plaintiff has, at most, shown negligence or medical malpractice, but not the kind of deliberate indifference that rises to a violation of his constitutional rights. Therefore, it is the RECOMMENDATION of the undersigned that defendant Lewis' motion for summary judgment be **GRANTED**.

*2. Defendants' Motion for Summary Judgment (doc. 61)*

Sergeant Cofield and Sergeant McKennon move for summary judgment, incorporating by reference the brief and supporting documents filed by Defendant Lewis in her motion for summary judgment regarding deliberate indifference to plaintiff's serious medical needs. (doc. 55).

Insofar as plaintiff is alleging that these defendants were deliberately indifferent to or caused a delay in plaintiff receiving medical treatment, it appears that they are entitled to summary judgment on that issue for all the reasons abovesaid. Therefore, it is the RECOMMENDATION of the undersigned that defendants Cofield and McKennon's motion for summary judgment be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 15th day of August, 2007.

//S Richard L. Hodge
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

msd